UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT L SPILLARD,<br><br>Plaintiff,<br><br>v.<br><br>NURSE IVER LIEN, et al.,<br><br>Defendants. | Case No. 19-cv-01407-JST<br><br>**ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION; GRANTING DEFENDANTS' REQUEST TO STRIKE; DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION; DENYING PLAINTIFF'S REQUEST FOR COUNSEL; SETTING BRIEFING SCHEDULE**<br><br>Re: ECF No. 36, 40, 42 |

Plaintiff, an inmate at California Medical Facility, has filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that Humboldt County Jail nurse Iver Lien[1] and Dr. Burleson were deliberately indifferent to his serious medical needs when they gave him psychiatric medication, specifically nortriptyline,[2] without his knowledge, and when, during his first month at Humboldt County Jail, failed to give him his diabetic medication. ECF Nos. 24, 25. Now pending before the Court are Defendants' motion for summary judgment (ECF No. 25); Defendants' motion to strike Plaintiff's sur-reply (ECF No. 40); and Plaintiff's motion for summary judgment (ECF No. 42). For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment (ECF No. 25); GRANTS Defendants' motion to strike Plaintiff's sur-reply (ECF No. 40); and DENIES Plaintiff's motion for summary judgment (ECF No. 42).

---

[1] Plaintiff incorrectly identifies Nurse Iver Lien as nurse Ivers. The Clerk is directed to correct the docket to reflect Defendant Lien's correct name, Iver Lien.

[2] Because Plaintiff identified the medication as Nortryoleyne in his complaint, the Court's screening order mistakenly identified the medication. According to Plaintiff's medical records, he was prescribed nortriptyline. *See*, *e.g.*, ECF No. 37 at 12.

**BACKGROUND**

**I.   Procedural History**

Plaintiff's initial complaint complained that Humboldt County Jail officials failed to provide meals appropriate to manage his diabetes, failed to release his property to his friend, housed him with a convict, forced him to sleep on the floor, and failed to provide him with a blanket. ECF No. 1. The Court dismissed the initial complaint with leave to amend because, *inter alia*, the initial complaint was vague and conclusory in that it failed to state clearly what each defendant did, when the action happened, and how these actions or inactions rose to the level of a federal constitutional violation; because the initial complaint failed to make specific allegations against each named defendant; and because the initial complaint violated Fed. R. Civ. P. 20(a). ECF No. 11.

Plaintiff filed an amended complaint that, similar to the initial complaint, was a conclusory and vague laundry list of grievances regarding his treatment by Humboldt County Jail officials. ECF No. 14. The Court identified the deficiencies in the amended complaint and granted Plaintiff leave to file a second amended complaint that remedied these deficiencies. ECF No. 15.

Plaintiff filed a second amended complaint that, similar to the two prior complaints, made conclusory and vague allegations regarding inadequate medical treatment, referring to Defendants as "they" and failing to identify which individual violated his constitutional rights, and what action or inaction caused the alleged constitutional violations. ECF No. 16. The Court identified the deficiencies in the second amended complaint, again explained the elements of relevant constitutional claims, and granted Plaintiff leave to file a third amended complaint that remedied these deficiencies. ECF No. 22.

Plaintiff filed a third amended complaint, ECF No. 24, and the Court found that, liberally construed, the third amended complaint stated cognizable Eighth Amendment claims against Humboldt County Jail nurse Ivers and Dr. Burleson for giving him psychiatric medication, specifically nortriptyline, without his knowledge, and failing to give him diabetic medication during his first month at Humboldt County Jail. ECF No. 25 at 4. The Court dismissed Plaintiff's remaining Eighth Amendment claims, which alleged that Nurse Ivers failed to provide him an

1  ADA compliant diet, that Dr. Burleson knew that Plaintiff's toe would "blow up" in a diabetic
2  infection but did nothing, and that California Forensic Medical Group nurses administered
3  diabetes medication to Plaintiff one to five hours after his meals because the conclusory
4  allegations failed to state cognizable Eighth Amendment violations.  The Court declined to grant
5  Plaintiff further leave to amend these claims because Plaintiff had been given three opportunities
6  to amend these claims to state cognizable Section 1983 claims and had failed to do so.  ECF No.
7  25 at 4-5.

## II.  Relevant Factual Background[3]

The following facts are undisputed unless otherwise noted.

Plaintiff has been diabetic for eleven years.  ECF No. 37 at 1.  Five years ago, Plaintiff lost the large toe on his left foot due to diabetes.  Subsequently, Plaintiff learned how to control his diabetes by eating a carb controlled diet.  ECF No. 37 at 1.

The parties do not specify whether, during the relevant time period, Plaintiff was incarcerated pursuant to a conviction or was a pre-trial detainee.  On October 2, 2017, Plaintiff arrived at Butte County Jail.  ECF No. 36 at 2.  At the medical intake, Plaintiff reported having hypertension and diabetes; that he was taking metformin and glipizide; and that his glucose levels normally ran between 70-80.  ECF No. 36 at 2; ECF No. 36-1; ECF No. 36-2 at 1-4.  Plaintiff was found to have an elevated blood pressure of 200/120 and a blood glucose level of 294.  As a result, Plaintiff was sent to St. Joseph Hospital for medical clearance.  ECF No. 36 at 2; ECF No. 36-1; ECF No. 36-2 at 1-4.  At St. Joseph Hospital, Plaintiff self-reported that, at that time, he was not taking his metformin and blood pressure medications as prescribed.  ECF No. 37 at 10.  St. Joseph Hospital cleared Plaintiff for incarceration, and Plaintiff was transferred to Humboldt County Jail. ECF No. 36-2 at 5-8.  Upon arrival at Humboldt County Jail, Plaintiff was given metformin,

---

[3] In Plaintiff's opposition and sur-reply, Plaintiff alleges that Humboldt County Jail officials failed to provide him appropriate treatment for his diabetes when they (1) failed to provide him meals that could control his blood glucose levels and failed to allow him to take his diabetes medicine half an hour prior to meals; (2) failed to take a culture of his toe infection and simply treated the infection with antibiotics; and (3) failed to provide him gabapentin.  ECF Nos. 37, 39.  Because these allegations are unrelated to the claims which the Court has found cognizable and because the sur-reply was not authorized by the Court, the Court does not consider these allegations in deciding the summary judgment motion.

3

hydrochlorothiazide, and lisinopril, and defendant RN Iver Lien ordered amlodipine and metformin for Plaintiff. ECF No. 36-2 at 5. Humboldt County Jail medical staff contacted Plaintiff's pharmacy, which confirmed active prescriptions for gabapentin, glipizide, hydrochlorothiazide, lisinopril, tamsulosin, and atorvastatin. ECF No. 36 at 2; ECF No. 36-2 at 9. The next day, October 3, 2017, Plaintiff was examined by medical staff and medical staff renewed Plaintiff's prescriptions for hydrochlorothiazide, glipizide, lisinopril, tamsulosin, and atorvastatin through December 2017, and ordered Plaintiff an ADA diet with snack. ECF No. 36-2 at 9, 11. Plaintiff's glucose level on October 3, 2017 was 187 and his blood pressure was 144/90. ECF No. 36-2 at 10-11. The following two days, his blood glucose levels were 129 and 160, respectively. ECF No. 36-2 at 10. Defendants' expert, Dr. Levin, characterized the blood glucose levels as within normal limits, but did not specify what constitutes normal limits. ECF No. 36-3 at 2. The California Forensic Medical Group diabetic chart defines normal blood fasting sugar (glucose) levels as between 70-110 mg/dl. ECF No. 36-2 at 10. Plaintiff claims that normal limits for blood glucose levels are between 80 to 120. ECF No. 37 at 2. Plaintiff also states that his blood glucose levels were 129 and 160 those two days because he was fasting during that time. ECF No. 37 at 20.

Between October 2, 2017 and October 27, 2019, Plaintiff was provided daily with glipizide, hydrochlorothiazide, lisinopril, tamsulosin, and atorvastatin. ECF No. 36-2 at 25. Plaintiff's medical records indicate that he met with medical staff on October 6, 17, 23, and 26, 2017. ECF No. 36-2 at 12-13. It is unclear what was discussed at these appointments. The medical notes for these appointments are difficult to decipher and neither party has discussed these appointments. Plaintiff's blood glucose levels were not checked between October 4 through October 27, 2017.

On October 27, 2017, Plaintiff was seen by medical staff. Plaintiff complained that he had not received metformin since his arrival and that he was suffering chronic nerve pain in both feet. ECF No. 36-2 at 12. Metformin was ordered for Plaintiff, with the first dose given at the appointment. Plaintiff was started on 50 mg daily of nortriptyline to address the nerve pain. ECF No. 36-2 at 12. According to Plaintiff's medication log, starting October 27, 2017 and until

4

1    March or May 2018, Plaintiff was offered metformin and nortriptyline daily, and took these

2    medications, as well as others, most days. ECF No. 36-2 at 25-40.

3          From October 28 through November 1, 2017, Plaintiff's blood glucose levels were

4    monitored daily, with readings taken in the early morning, and were 168, 221, 82, 136, and 143.

5    ECF No. 36-2 at 14.

6          Plaintiff was seen again by medical staff on November 3, 2017. At this meeting, Plaintiff

7    requested that he be allowed to check his blood glucose levels in the evenings, stating that the

8    current glucose monitoring did not accurately measure his glucose control because the readings

9    were taken in the morning and his blood glucose levels tended to spike in the evening. Plaintiff

10   stated that he wanted to control his blood glucose levels by counting his carbohydrates, as he

11   normally did at home. Plaintiff was informed that this practice would not be available to him

12   while incarcerated. ECF No. 36-2 at 15.

13         On November 4, 2017, Plaintiff's blood glucose level was 110. ECF No. 36-2 at 17. On

14   November 5, 2017, Plaintiff's blood glucose level was 259 in the morning and 354 in the

15   afternoon. ECF No. 36-2 at 17. The nurse was notified and seven units of regular insulin were

16   ordered for Plaintiff. ECF No. 36-2 at 15, 17. Plaintiff refused to take the insulin, stating that he

17   was not a junkie. ECF No. 36-2 at 15. Plaintiff states that there would be no need for insulin if he

18   were allowed to control his diabetes through diet and regular testing. ECF No. 37 at 2.

19         From November 6-9, 2017, Plaintiff's blood glucose levels were taken twice daily. ECF

20   No. 36-2 at 17. On November 6, 2017, Plaintiff's blood glucose levels were 125 in the morning

21   and 219 in the evening. ECF No. 36-2 at 17. On November 7, 2017, Plaintiff's blood glucose

22   levels were 98 in the morning and 281 in the evening. ECF No. 36-2 at 17. On November 8,

23   2017, Plaintiff's blood glucose levels were 118 in the morning and 201 in the evening. ECF No.

24   36-2 at 17. On November 9, 2017, Plaintiff's blood glucose levels were 83 in the morning and

25   220 in the evening. ECF No. 36-2 at 17.

26         Plaintiff was seen again by medical staff on November 9, 2017. ECF No. 36-2 at 41. The

27   medical notes reports, in relevant part, as follows:

28               History of chronic pain with various sources feet including

5

>peripheral neuropathy.  Has been provided with nortriptyline 50 mg each evening but finds this does little to alleviate his discomfort.  Wonders what else can be done to address his pain.

ECF No. 36-2 at 41.  According to the medical notes, Plaintiff informed medical staff that he wanted his glucose levels checked with his evening meal and his medication to be given just prior to eating per the directions on the bottle. ECF No. 36-2 at 41.

From November 10-23, 2017, Plaintiff's blood levels were checked twice daily, generally at 5:30 am and 4:00 pm.   ECF No. 36-2 at 19-20.  Generally speaking, Plaintiff's morning blood glucose levels were within normal fasting limits for diabetics as defined by California Medical Forensic Group (70-111 mg/dl) and by Plaintiff (80-120 mg/dl).  ECF No. 36-2 at 19-20.  Plaintiff's afternoon blood glucose levels ranged from 140-220, raising to 289 and 266 on two different occasions.  ECF No. 36-2 at 19-20.

According to Plaintiff's medical records, he was transferred away from Humboldt County Jail sometime before June 6, 2018.  ECF No. 36-2 at 30-40.

Plaintiff's medical records indicate that defendant Burleson was aware of, and approved, the medical treatment provided Plaintiff.  *See, e.g.,* ECF No. 36-2 at 11-13, 15.  The record is unclear as to when, or if, defendant Burleson examined Plaintiff in person.  Plaintiff states that he saw Dr. Burleson only once, three days before his toe exploded. ECF No. 37 at 2.  Plaintiff does not provide the date of his meeting with Dr. Burleson or the date his toe exploded.

## DISCUSSION

### I.     Summary Judgment Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

6

party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## II.     Legal Standard for Medical Care Claims

The legal standard for evaluating Plaintiff's medical care claims depends on whether, during the relevant time period, he was a pretrial detainee or incarcerated pursuant to a conviction.

A pretrial detainee's medical care claim is evaluated under the due process clause of the Fourteenth Amendment, which is an objective deliberate indifference standard, whereas a convicted prisoner's medical care claim is evaluated under the Eighth Amendment, which is a subjective deliberate indifference standard. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). The elements of a pretrial detainee's Fourteenth Amendment medical care claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—

7

making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, which is a fact-dependent question. *Id.* at 1125 (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). Although a Fourteenth Amendment medical care claim does not require that a plaintiff prove subjective elements regarding the defendant's actual awareness of the risk, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (2016)). A plaintiff must "prove more than negligence but less than subjective intent – something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

A prison official's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have

been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson*, 290 F.3d at 1188. In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060.

### III. Defendants' Motion to Strike

Defendants request that the Court strike ECF No. 39, which Plaintiff filed after Defendants filed their reply in support of their summary judgment motion and which Plaintiff has titled "Plaintiff's Facts to Defendants' Reply." ECF No. 40. Per Northern District Local Rule 7-3(d), once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval except where new evidence was submitted in the reply or a new judicial opinion was published after the date the opposition or reply was filed. N.D. Cal. L.R. 7-3(d). Accordingly, Plaintiff's additional pleading opposing Defendants' summary judgment motion (ECF No. 39), which the Court will refer to as a sur-reply, required Court permission prior to filing. To the extent ECF No. 39 can be construed as seeking leave to file a sur-reply, the Court DENIES that request. There are no grounds for such leave, i.e., the reply brief did not contain new evidence or argument. The Court will not consider the sur-reply in deciding the motion for summary judgment. The Court also notes that Plaintiff's sur-reply makes allegations unrelated to the claims which the Court has found cognizable and therefore is not relevant. The Court therefore GRANTS Defendants' motion to strike ECF No. 39. ECF No. 40.

### IV. Defendants' Summary Judgment Motion

#### A. Failure to Provide Metformin Prior to October 27, 2017

Defendants argue that they are entitled to summary judgment on this claim because Plaintiff's care while at Humboldt County Jail met the standard of care because (1) the pharmacy's records contradicted Plaintiff's claim that he had been prescribed metformin and (2) Plaintiff's blood glucose levels were within normal limits indicating that the failure to provide Plaintiff with metformin from October 3-26, 2017 did not harm him. ECF No. 36 at 4. Defendants further argue that where medical care is compliant with the standard of care, there cannot be a violation of either the Eighth Amendment or the Fourteenth Amendment. ECF No. 36 at 5-6. Defendants

present a declaration from Dr. Levin, an emergency room physician who has been licensed to practice medicine in California since 1976. After reviewing Plaintiff's medical records, Dr. Levin concluded that he believed that the medical care provided Plaintiff at Humboldt County Jail met or exceeded the standard of care and did not reflect any indifference to Plaintiff's medical condition. ECF No. 36-3.

In relevant part, Plaintiff argues that his medical care was improper because metformin was necessary to control his diabetes. He argues that the fact that St. Joseph's Hospital had prescribed him metformin proves that he needed metformin to control his diabetes. ECF No. 37 at 27-28, 30. He also argues that Defendants inaccurately represent his blood glucose levels as within normal limits. ECF No. 37 at 27. He argues that normal limits are between 80-120, and anything above 150 is harmful to a diabetic. ECF No. 37 at 27. He further argues that his blood glucose level readings were inaccurate because they were taken in the morning, eleven hours after he last ate. ECF No. 37 at 27. Finally, he argues that Dr. Levin is not qualified to evaluate the adequacy of the medical care provided by Humboldt County Jail. ECF No. 37 at 1-2, 27-28. Plaintiff argues that emergency room physicians do not have the specialized knowledge to correctly evaluate medical treatment provided to diabetic patients; and that Dr. Levin practiced so long ago that he no longer is aware of current treatment protocol for diabetic patients. ECF No. 37 at 1-2, 27-28. Plaintiff argues that Dr. Levin's incorrect characterization of his glucose levels as within normal limits indicates that he is unqualified to evaluate medical treatment for diabetic patients. ECF No. 37 at 1-2, 27-28.

Defendants argue that Plaintiff's disagreement with Dr. Levin as to the proper medical treatment for diabetic patients is a mere difference of opinion regarding medical treatment which, as a matter of law, does not constitute an Eighth Amendment violation. ECF No. 38 at 5-6.

The Court has carefully reviewed the record and finds that Defendants are entitled to summary judgment as a matter of law under both the Fourteenth Amendment and the Eighth Amendment.

### 1. Fourteenth Amendment Claim

With respect to the Fourteenth Amendment claim, Plaintiff has failed to make a showing

sufficient to establish that Defendants' failure to prescribe metformin for three weeks put him at risk, was objectively unreasonable, or caused him the identified injury.[4]  Specifically, Plaintiff has failed to establish that his medical condition at intake indicated that metformin was necessary in addition to glipizide to control his diabetes, and that the failure to prescribe metformin resulted in his toe being infected.  Plaintiff was prescribed metformin for his diabetes at intake on October 2, 2017.  After learning that Plaintiff did not have an active prescription for metformin, Humboldt County Jail medical staff prescribed glipizide to control Plaintiff's diabetes.  Plaintiff's blood glucose levels in the days immediately after starting regular glipizide doses indicate that the glipizide alone was successful in bringing down his blood glucose levels.  His levels dropped from the initial 294 mg/dl reading at intake to 187 mg/dl, 129 mg/dl, and 160 mg/dl on October 3-5.  While these blood glucose levels are not within the normal levels described by either Plaintiff (80-120 mg/dl) or the California Forensic Medical Group (70-110 mg/dl),[5] the record indicates that it takes time for diabetic medication to stabilize blood glucose levels.  For example, when Plaintiff started metformin in late October, his blood glucose levels for the first five days generally remained above the 120 mg/dl level (168 mg/dl, 221 mg/dl, 82 mg/dl, 136 mg/dl, and 143 mg/dl).  During his second week on metformin, Plaintiff's blood glucose level spiked to 259 mg/dl but fell to 125 mg/dl the next day.  The fact that Plaintiff's blood glucose levels had not dropped below 120 mg/dl by October 5 does not create a triable issue of fact as to whether the intentional decision to treat Plaintiff with only glipizide, when Plaintiff's pharmacy reported that he had no active prescription for metformin, objectively put Plaintiff at substantial risk of serious harm.  There is also no triable issue of fact as to whether the failure to prescribe Plaintiff metformin in October

---

[4] Although the record indicates that defendant Lien met repeatedly with Plaintiff during October 2017 and either managed or directed Plaintiff's medical treatment during that month, the only indication of defendant Burleson's involvement in Plaintiff's medical care is his stamp on Plaintiff's medical records.  Viewing the record in the light most favorable to Plaintiff, the Court presumes that defendant Burleson was contemporaneously reviewing Plaintiff's medical records and that his stamp indicated his approval of the treatment provided.

[5] Dr. Levin conclusorily states that these blood glucose levels are within normal levels.  ECF No. 36-3 at 2.  But he fails to specify what he considers to be "within normal levels," making it difficult for the Court to understand how he arrived at this conclusion and how to evaluate Plaintiff's claim that these levels are not within normal limits.

11

2017 caused the December 2017 infection of Plaintiff's toe (and subsequent amputation). Presumably Plaintiff's argument is that the failure to properly treat his diabetes, including the failure to prescribe him metformin in October 2017, caused his large toe to be infected. However, there is nothing in the record from which it can be reasonably inferred that the December 2017 infection was caused by the failure to prescribe metformin in October 2017. After two weeks on metformin, Plaintiff's blood glucose levels stabilized at levels that he considers to be within normal limits. For most of November 2017 and all of December 2017, Plaintiff's blood glucose levels remained within normal limits, indicating his diabetes was under control.

Viewing the record in the light most favorable to Plaintiff, the Court finds that it was not objectively unreasonable for Defendants to initially only prescribe glipizide to treat Plaintiff's diabetes. The Court GRANTS summary judgment in favor of Defendants with respect to the Fourteenth Amendment claim regarding the failure to prescribe metformin between October 3, 2017 to October 27, 2017.

### 2. Eighth Amendment Claim

Defendants are also entitled to summary judgment with respect to the Eighth Amendment claim regarding the failure to prescribe metformin between October 3 to October 27, 2017. To prevail on an Eighth Amendment claim, a prisoner-plaintiff must demonstrate that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and drew that inference. *See Farmer*, 511 U.S. at 837.

Plaintiff has not presented any evidence from which it can be reasonably inferred that Defendants were aware that the failure to prescribe him metformin exposed Plaintiff to substantial risk of serious harm. Plaintiff and Defendants disagree as to what constitutes normal fasting blood glucose levels, as to whether they should monitor fasting blood glucose levels or non-fasting blood glucose levels, as to whether metformin is the required first-line medication for managing diabetes rather than glipizide, and as to how high a blood glucose level must be to trigger the use of metformin. This disagreement between the parties, where there was no active prescription for metformin and Plaintiff's blood glucose levels decreased when treated solely with glipizide, does not rise to the level of an Eighth Amendment violation. *Franklin v. Oregon*, 662 F.2d 1337, 1344

(9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."). To the extent that Plaintiff is arguing that Defendants should have realized that the glipizide's failure to bring his blood glucose levels within normal limits with three days, this argument states, at best, a claim for negligence or malpractice, which does not violate the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004) (claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment) (summary judgment in favor of defendant doctor appropriate where evidence showed doctor did not believe that Cogentin use presented a serious risk of harm to plaintiff, and where there was no indication in the record that doctor was aware of a risk that plaintiff was suffering from Klonopin withdrawal; claim that doctor failed to conduct a differential diagnosis did not amount to more than negligence and claim that doctor failed to employ emergency treatment was conclusory). If Defendants should have been aware of the risk of not treating Plaintiff's diabetes with metformin, but were not, then there is no Eighth Amendment violation, no matter how severe the risk. *Gibson*, 290 F.3d at 1188.

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is no triable issue of fact as to whether Defendants were aware that there was a substantial risk of serious harm to Plaintiff if his diabetes were treated only with glipizide. The Court GRANTS summary judgment in favor of Defendants with respect to the Eighth Amendment claim regarding the failure to prescribe metformin between October 3, 2017 to October 27, 2017.

### B. Prescribing Nortriptyline Without Obtaining Consent

It is undisputed that, starting October 27, 2017, Plaintiff was prescribed a daily 50 mg dose of nortriptyline, and that Plaintiff took nortriptyline daily while housed at Humboldt County Jail. Defendants allege that the nortriptyline was prescribed to address Plaintiff's chronic nerve pain, and Dr. Levin states that nortriptyline is commonly prescribed to address the neuropathic pain often reported in the extremities of patients with diabetes. ECF No. 36-3 at 1-2.

Plaintiff states that he did not learn that he was being prescribed nortriptyline until he arrived at San Quentin State Prison, presumably sometime after June 2018, and that he never consented to taking nortriptyline. Plaintiff alleges that Defendants prescribed him nortriptyline

13

solely to "dummy him up" before and during his trial. He argues that Defendants' claim that nortriptyline was prescribed to address his nerve pain is not credible because nortriptyline's sole use is as an antidepressant, nortriptyline is not used for pain relief, nortriptyline never alleviated his pain, and Defendants failed to obtain his consent. Plaintiff also argues that Dr. Levin is unqualified to evaluate whether nortriptyline should be prescribed to address diabetic patients' neuropathic pain because he is not an endocrinologist or a psychologist/psychiatrist and because medicine has changed significantly since Dr. Levin started practicing.

### 1. Fourteenth Amendment Claim

Liberally construed, Plaintiff's allegation that he was provided nortriptyline without his consent states two different Fourteenth Amendment claims.

First, as explained above, a pretrial detainee's medical care claim is evaluated under the Due Process Clause of the Fourteenth Amendment.

Second, the Ninth Circuit has held that the Fourteenth Amendment provides for the right to be "free from unjustified intrusions into the body." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (citing *Riggins v. Nevada*, 504 U.S. 127, 134 (1992)). That right includes the right "to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently." *Id.*

Liberally construed, Plaintiff's medical care claim is that provided constitutionally inadequate medical care, in violation of the Fourteenth Amendment when they prescribed him nortriptyline for his pain. In considering this claim, the question is not whether the nortriptyline was effective, but whether prescribing nortriptyline meets the four elements set forth in *Gordon*. The Court finds that Plaintiff has failed to make a showing sufficient to establish a triable issue of fact as to whether Defendants' decision to prescribe him nortriptyline put him at risk, as to whether it was objectively unreasonable for Defendants to prescribe nortriptyline, and as to whether nortriptyline caused him injury. The only "risk" or injury that Plaintiff has identified is his speculative conclusion that the nortriptyline was prescribed to dummy him up before and during his trial. The evidence that Plaintiff proffers in support of this theory – that the nortriptyline was ineffective; it was prescribed during his trial; and nortriptyline should not be

14

1  prescribed to people with heart conditions – fails to establish a triable issue of fact as to whether
2  Defendants prescribed nortriptyline solely to harm him.  While nortriptyline is an anti-depressant,
3  this does not preclude it from also being prescribed to treat other conditions, including pain
4  management.  In addition, nothing in the record indicates that the nortriptyline was forcibly
5  administered to him or that Plaintiff could not refuse the nortriptyline.  In fact, the record indicates
6  that Plaintiff did refuse medication on certain dates.  ECF No. 36-2 at 23-25.
7         Plaintiff has provided no evidence indicating that nortriptyline does not treat both
8  depression and pain, even if it was ineffective in treating his pain.  Also, the fact that nortriptyline
9  was ineffective at treating his pain also does not prove that it was prescribed solely for the
10 nefarious purpose of dummying Plaintiff up, especially here where Plaintiff had the ability to
11 refuse it.  Finally, there is nothing in the record indicating that nortriptyline caused Plaintiff any
12 injury.  Plaintiff has not alleged that the nortriptyline exacerbated his diabetes, was prescribed in
13 lieu of treating his diabetes, or caused the infection in his big toe.  Plaintiff "cannot defeat
14 summary judgment . . . with unsupported conjecture or conclusory statements."  *Hernandez v.*
15 *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Plaintiff's Fourteenth Amendment
16 claim that prescribing him nortriptyline constituted deliberate indifference to his serious medical
17 needs fails as a matter of law.
18        Viewing the record in the light most favorable to Plaintiff, the Court finds that there is no
19 triable issue of fact as to whether Defendants were aware that there was a substantial risk of
20 serious harm to Plaintiff if he was prescribed nortriptyline to treat his pain.  The Court GRANTS
21 summary judgment in favor of Defendants with respect to the Fourteenth Amendment claim
22 regarding prescribing him nortriptyline to treat his pain.
23        With respect to the informed consent claim, the Court did not clearly identify this claim in
24 the screening order, and neither party has briefed this issue.  Accordingly, the Court ORDERS
25 Defendants to file a dispositive motion with respect to this remaining Fourteenth Amendment
26 claim in accordance with the briefing schedule set forth at the end of this order.
27       **2.**    **Eighth Amendment Claim**
28        Defendants are also entitled to summary judgment with respect to Plaintiff's Eighth

Amendment claim regarding the prescription of nortriptyline. There is nothing in the record from which it can be reasonably inferred that nortriptyline harmed Plaintiff, or that nortriptyline is not prescribed for nerve pain. It therefore follows that there is no triable issue of fact as to whether Defendants knew that nortriptyline posed a substantial risk of serious harm to Plaintiff.

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is no triable issue of fact as to whether Defendants were aware that there was a substantial risk of serious harm to Plaintiff if he was prescribed nortriptyline for his pain. The Court GRANTS summary judgment in favor of Defendants with respect to the Eighth Amendment claim regarding prescribing him nortriptyline to treat his pain.

## V.     Plaintiff's Summary Judgment Motion

Plaintiff argues that he is entitled to summary judgment because he was prescribed nortriptyline without his consent in violation of Cal. Welfare & Inst. Code § 5326.2; because he was provided with a diet harmful to diabetics; and because he was not properly administered his medications in that they were provided one to five hours after his meal instead of thirty minutes prior to meals, as directed by the drug manufacturer. ECF No. 42.

As discussed above, the informed consent claim has not been properly briefed by the parties. Accordingly, at this time, the Court DENIES summary judgment with respect to the informed consent claim without prejudice to considering this claim in later-filed dispositive motions.

Plaintiff's two remaining arguments are not within the scope of the third amended complaint. The only cognizable claims set forth in the third amended complaint are that Defendants violated his constitutional rights when they administered nortriptyline to him without his knowledge and when they failed to prescribe him metformin from October 5-27, 2017. The Court therefore DENIES summary judgment on Plaintiff's remaining claims.

To the extent that Plaintiff seeks to amend his third amended complaint to add claims alleging that Defendants violated Plaintiff's constitutional rights when they failed to provide him with a meal plan that was appropriate for diabetics and when they failed to administer his medications thirty minutes prior to meals, this request is DENIED. While there is a strong policy

16

favoring liberal amendment, a district court may properly deny leave to amend where there is "apparent or declared" evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Not all the factors merit equal weight . . . it is the consideration of prejudice to the opposing party that carries the great weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The first factor weighs in favor of Plaintiff. There is no evidence of undue delay, bad faith or dilatory motive on Plaintiff's part.

The second factor weighs in favor of Defendants. Plaintiff has repeatedly failed to cure deficiencies in his complaint. As noted in the procedural history provided above, the Court provided Plaintiff multiple opportunities to file a complaint that presents cognizable claims and provided specific guidance as to why his claims were found deficient. It is clear that Plaintiff believes that his medical treatment at Humboldt County Jail violated the federal Constitution. However, a general allegation that medical treatment did not meet constitutional standards does not state a cognizable federal constitutional claim. As explained repeatedly to Plaintiff, in preparing a complaint, a plaintiff must, for each alleged constitutional violation, clearly describe the action or inaction that allegedly violated the Constitution, identify which defendant committed the alleged constitutional violation, and explain how these actions or inactions rose to the level of a federal constitutional violation. Plaintiff has repeatedly failed to follow the Court's instructions and repeatedly failed to state cognizable claims other than the two claims currently at issue.

The third factor is neutral. Defendants are prejudiced in that allowing an amended complaint will further delay this case. This case was filed on March 18, 2019, and has been pending a year and a half. However, Defendants' summary judgment motion has not ended this action as the Court has ordered additional briefing on the informed consent claim.

The fourth factor weighs against Plaintiff. The record indicates that, despite being provided an allegedly harmful diet and being administered his medication at allegedly harmful times, Plaintiff's blood glucose levels remained within what Plaintiff has identified as normal

17

limits, after stabilizing in November 2017. To the extent that Plaintiff argues that Defendants were on notice that these practices (inappropriate diet and medication administered after meals) were harmful, Defendants did not act unreasonably in relying on Plaintiff's blood glucose levels to determine whether he faced an unreasonable risk, and in refusing to change the diet provided and in refusing to change the timing of medications. Given this record, Defendants' refusal to provide Plaintiff with a different diet and to change the timing of his medications would not violate either the Eighth Amendment or the Fourteenth Amendment.

The Court therefore exercises its discretion and declines to allow Plaintiff to amend the complaint a fourth time, at this late date, to add these claims.

## VI. Plaintiff's Request for Appointment of Counsel

Plaintiff argues that he requires an attorney because his facility does not have an adequate law library. ECF No. 42 at 3. This is Plaintiff's third request for appointment of counsel. Plaintiff has not demonstrated that exceptional circumstances require appointment of counsel at this time. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (noting that "a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)."); *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (finding of "exceptional circumstances" requires evaluation of likelihood of plaintiff's success on merits and plaintiff's ability to articulate claims *pro se* in light of complexity of legal issues).

## CONCLUSION

For the reasons set forth above, the Court orders as follows.

1. The Court GRANTS Defendants' motion for summary judgment on their medical care claims. ECF No. 36.

2. The Court GRANTS Defendants' motion to strike ECF No. 39. ECF No. 40.

3. The Court DENIES Plaintiff's motion for summary judgment, DENIES his request for leave to amend the third amended complaint, and DENIES his request for appointment of counsel. ECF No. 42.

4. The Court ORDERS Defendants to file, within sixty (60) days of the date of this order, a dispositive motion with respect to the sole remaining claim that Defendants prescribed

Plaintiff nortriptyline without his consent, in violation of the Fourteenth Amendment. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[6]

Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

This order terminates ECF Nos. 36, 40, 42.

**IT IS SO ORDERED.**

Dated: December 28, 2020



JON S. TIGAR
United States District Judge

---

[6] If Defendants asserts that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).